IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ANDREW J. IRWIN,                      )
                                      )
            Plaintiff,                )
                                      )
                                      ) Case No. CIV-19-289-JFH-KEW
                                      )
COMMISSIONER OF THE SOCIAL            )
SECURITY ADMINISTRATION,              )
                                      )
            Defendant.                )

**REPORT AND RECOMMENDATION**

Plaintiff Andrew J. Irwin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 54 years old at the time of the most recent decision. He has a high school education and past relevant work as a material handler, tire builder, automotive starter repairer, meat hanger, and meat smoker. Claimant alleges an inability to work beginning on September 10, 2012, due to limitations resulting from chronic obstructive pulmonary disease (COPD)/shortness of breath, bipolar I disorder, arthritis, major depression, left shoulder SLAP tear, osteoarthritis of bilateral hands, pain in the ankles and joints, panic attacks, hip pain, surgery on his eye, memory loss, dizziness, and lumbar spondylosis.

**Procedural History**

On June 24, 2013, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's claims were denied in June of 2015. After the Appeals Council denied review, Claimant appealed in the District Court of Utah, and the ALJ's decision was remanded for further proceedings. Another decision denying Claimant's claims was issued in August of 2017, wherein Claimant again sought review in the District Court of Utah, and the case was again remanded.

Claimant relocated to Oklahoma. On remand, ALJ Michael Mannes conducted an administrative hearing from McAlester, Oklahoma on April 3, 2019. Claimant was present and testified at the hearing. On June 12, 2019, the ALJ entered an unfavorable decision. For purposes of appeal, the ALJ's decision represents the Commissioner's final decision. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

4

**Errors Alleged for Review**

Claimant asserts the ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of Claimant's long-time treating physician, William Esplin, D.O., and a certified physician's assistant, Adon Pearson, PA-C.

**Consideration of Medical Opinion Evidence**

In his decision, the ALJ found Claimant suffered from severe impairments of COPD, left shoulder SLAP tear, osteoarthritis of the bilateral hands, depression, anxiety, and lumbar spondylosis. (Tr. 1068). He determined Claimant could perform light work, except he could only occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. Claimant could frequently balance but only occasionally stoop, kneel, crouch, or crawl. He could occasionally reach overhead with the left upper extremity and frequently handle or finger bilaterally. Claimant was to avoid concentrated exposure to extreme cold, dust, odors, fumes, and pulmonary irritants. He had the ability to understand, remember, and carry out simple instructions, to have frequent interaction with supervisors and co-workers, to have occasional interaction with the general public, and to respond appropriately to changes in a routine work setting. Claimant had to "alternate sitting and standing every 20 to 30 minutes throughout the workday in order to change positions for a brief positional change of less than 5

minutes but without leaving the workstation." (Tr. 1070).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of inspector and hand packager, small product assembler, and electrical accessory assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 1081). As a result, the ALJ concluded Claimant was not under a disability from September 10, 2012, through the date of the decision. (Tr. 1082).

Claimant contends the ALJ's RFC assessment is not supported by substantial evidence because he improperly weighed the opinions of certified physician's assistant Mr. Pearson and treating physician Dr. Esplin, both of whom provided Claimant medical care and treatment when he resided in Utah. He asserts the ALJ failed to properly weigh the opinions of Mr. Pearson and Dr. Esplin when determining his RFC, and certain reasons given by the ALJ for affording "little weight" to their opinions are not supported by substantial evidence.

Regarding Mr. Pearson, the ALJ thoroughly discussed Claimant's treatment by Mr. Pearson in the decision. The ALJ referenced treatment records from 2013 wherein Mr. Pearson noted Claimant complained of breathing problems, had moderate coarse breath sounds and wheezing throughout lung field, but he also continued to smoke. (Tr. 1074, 429-30). He also noted Mr. Pearson's findings on several examinations from January of 2014 through April

6

of 2015, when Claimant's lungs were described by Mr. Pearson as clear to auscultation bilaterally, with no wheezes, rhonchi, or rales. (Tr. 450-53, 468-95, 1074). He also discussed Claimant's treatment from Mr. Pearson regarding his left shoulder SLAP tear. Dr. Pearson's treatment notes from 2014 revealed that Claimant exhibited pain, motion, and strength difficulties with his left shoulder, but in October of 2014, Claimant reported he was sleeping well and his pain was mostly controlled. (Tr. 472-95, 856-57, 1074). He further discussed Claimant's treatment by Mr. Pearson for lumbar spondylosis, noting Mr. Pearson's records showed that despite having back pain, Claimant consistently was in no acute distress. (Tr. 468-71, 472-95, 1075).

The ALJ addressed a March 7, 2014 letter from Mr. Pearson, wherein Mr. Pearson indicated Claimant had been his patient for approximately one year and had a history of COPD, generalized arthritis, and bipolar disorder. At that time, Claimant's greatest source of pain was his left shoulder. Mr. Pearson concluded the combination of Claimant's conditions limited his ability to work and perform normal activities of daily living. (Tr. 436, 1077). The ALJ also discussed in specific detail the physical RFC statement completed by Mr. Pearson dated March 11, 2015. In addition to numerous functional limitations, Mr. Pearson determined Claimant would be off task more than thirty percent of the time during an eight-hour workday, he was unable to complete

an eight-hour workday five days or more, he would be less than fifty percent efficient during an eight-hour workday, and he would be absent from work five days or more per month. (Tr. 454-57, 1077-78). Mr. Pearson stated that his opinions were based upon Claimant's history and medical file, physical examinations, and imaging studies. (Tr. 457).

As a certified physicians' assistant, Mr. Pearson is not considered an "acceptable medical source," but is considered an "other source." *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *2 (Aug. 6, 2006). When considering "other source" evidence, the ALJ should still explain the weight given to the opinions, but such an explanation "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d 1156, 1163-64 (10th Cir. 2012), quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . .").

The ALJ assigned "little weight" to Mr. Pearson's opinion, noting he was not an "acceptable medical source" and his opinion was not entitled to controlling weight. He acknowledged, however, that although the opinions of non-acceptable medical sources may be entitled to some weight, the record as a whole, as discussed in

8

the decision, did not support Mr. Pearson's opinion that Claimant was disabled based on the "objective findings on exam, conservative treatment, diagnostic imagining, the [C]laimant's own reported daily activities of living, and other opinions about the [C]laimant's functional capacity." (Tr. 1078).

Regarding Dr. Esplin, the ALJ discussed his treatment of Claimant throughout the summary of the evidence. The ALJ discussed Dr. Esplin's treatment records regarding Claimant's COPD, which included notes that Claimant continued to smoke, and his lungs were clear to auscultation bilaterally, with no wheezes, rhonchi, or rales. (Tr. 906-09, 1004-05, 1027, 1074). He also discussed Dr. Esplin's treatment of Claimant's left shoulder SLAP tear. He mentioned records from Dr. Esplin wherein Claimant failed to even mention his left shoulder pain during his appointments (Tr. 496-99, 1020-22, 906-09, 1074-75), and examinations from 2016, showing Claimant had normal range of motion of the extremities and normal strength, tone, and reflexes. (995-1003, 1004-05, 1075). The ALJ did note, however, that an MRI of Claimant's left shoulder from April of 2017 showed a SLAP tear. (Tr. 440-41, 1075).

Regarding Claimant's osteoarthritis in his hands, the ALJ discussed Dr. Esplin's treatment notes from May of 2015, which revealed that Claimant had osteoarthritic changes in his hands but no obvious red or swollen joints. (Tr. 496-99, 906-09, 1075). An x-ray of Claimant's bilateral hands from June of 2015 indicated

arthropathic changes but no acute osseous abnormality was noted. (Tr. 868, 1075). The ALJ further referenced an x-ray of Claimant's hands from February of 2017, noting they were stable and only had mild degenerative changes. (Tr. 1044, 1075).

The ALJ further discussed Claimant's treatment by Dr. Esplin for lumbar spondylosis. Records from May of 2014 revealed positive straight leg raise bilaterally, but Claimant had no focal neurological deficits. X-rays in 2015 and 2016 revealed spondylosis (Tr. 911, 965, 1075-76), but Claimant had normal strength, tone, and reflexes throughout. (Tr. 992-1003, 1004-05, 1076).

The ALJ also discussed two medical source statements Dr. Esplin completed for Claimant. On November 3, 2015, Dr. Esplin completed a treating source statement of physical limitations, wherein he determined that based on Claimant's limitations, Claimant could perform less than sedentary work. He determined Claimant's symptoms were severe enough to interfere with the attention and concentration to perform simple, routine tasks twenty percent or more of the workday, Claimant would be "off task" twenty percent or more of an eight-hour workday in a competitive work environment and less than fifty percent efficient during an eight-hour workday, and he would likely be absent from work as a result of his impairments and/or need for medical treatment four days or more per month. (Tr. 932-33, 1078). Dr. Esplin completed

a physical assessment of Claimant on April 4, 2016, finding Claimant could occasionally lift and/or carry ten pounds or less and stand, walk, and/or sit for up to an hour in an eight-hour workday. Claimant had to take unscheduled breaks every fifteen to thirty minutes, could only use his hands fifteen to twenty percent of the time, was unable to use his fingers and arms, and needed to recline or lie down during the workday. The symptoms associated with Claimant's impairments were severe enough to constantly interfere with his attention and concentration to perform simple work-related tasks. As a result of his impairments and/or treatment, Claimant was likely to miss work more than four times per month. (Tr. 961-62, 1078).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . .

opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

As with Mr. Pearson's opinion, the ALJ assigned "little weight" to Dr. Esplin's opinions:

> As discussed above in detail, the record as a whole did not support a finding that the [C]laimant's impairments were so severe as to be disabling. Indeed, while Dr. Espin [sic] did have a treating source relationship with the [C]laimant and regular occasion to observe him, his own records and internal findings on exam are not consistent with such a limiting functional capacity. In fact, Dr. Espin [sic] rarely every [sic] noted specific physical examination findings with regard to the various body systems he was treating. Further, in absence of his own documented observations, other medical evidence of record reflects the [C]laimant did have some abnormal findings with regard to his impairments; however, the same records reflect he experienced improvement with conservative treatment. Additionally, other records, including some of the most recent records, reflect no abnormalities such as normal gait, normal range of motion in the upper extremities, and/or normal psychiatric findings on exam.

(Tr. 1078).

Claimant contends the ALJ "picked and chose" the evidence to contradict the "well-reasoned" opinions of Mr. Pearson and Dr. Esplin and failed to discuss the significantly probative evidence supporting their opinions. The ALJ, however, discussed in detail the treatment notes of Mr. Pearson and Dr. Esplin in the decision.

Moreover, he also discussed the other evidence in the record. For example, in addition to considering evidence from Mr. Pearson and Dr. Esplin, the ALJ discussed evidence from the medical consultants who examined Claimant during the same time period as when Claimant was seen by Mr. Pearson and Dr. Esplin and after (Tr. 414-18, 977-81, 984-90, 1074-76), later treatment provided by other health care providers (Tr. 917-18, 930-31, 992-1003, 1004-05, 1006-24, 1042-43, 1511-14, 1564-75, 1584-95, 1075-76), and medical consultants who reviewed the medical evidence over the course of Claimant's treatment. (Tr. 64-71, 77-84, 96-104, 112-20, 1160-69, 1175-84, 1196-1209, 1221-34). Here, the ALJ's explanation of the evidence was adequate based upon his prior summary of the evidence. *See Endriss v. Astrue*, 506 Fed. Appx. 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

Claimant also contends the ALJ's determination that his condition had improved and that he had conservative treatment was unsupported. He maintains the ALJ should have considered his financial condition. Although Defendant concedes that Claimant's condition was more akin to "waxing and waning," instead of improved, the evidence supports the ALJ's conclusion that Claimant's treatment was conservative. The record demonstrates

13

Claimant took prescribed medication for pain throughout the relevant period (Tr. 1074-76), and although he lacked insurance at certain times and had to partially pay for his medication on others (Tr. 482, 452, 478, 1000, 1008, 1521, 1535), he also had insurance at times and underwent cataract surgery, a CT of his abdomen, and began seeing a pain specialist. (Tr. 476, 950, 995, 1011, 1079, 1452, 1498). His medication regimen was noted to be stable in March of 2018 (1076, 1511-14), and in October and November of 2018 and again in February of 2019, Claimant reported that the amount of pain relief he received from his medication was enough to make "a real difference in his life," and he reported he was active at home. (Tr. 1076, 1564-75, 1584-95).

Claimant further asserts that the ALJ improperly relied on his daily activities as a basis for assigning less weight to the opinions of Mr. Pearson and Dr. Esplin. However, the ALJ's consideration of Claimant's report of activities, or the inconsistencies therein, was an appropriate basis for weighing the medical opinions. Claimant reportedly had problems with personal care, needed help with buttons, did not prepare meals, had no hobbies, did not go places alone, could not drive or walk very far, and had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using his hands, and

14

getting along with others. (Tr. 1071). However, records also show that Claimant was able to button and unbutton his shirt, pick up a coin from a table, grasp a pen, write a sentence, and lift, carry, and handle his personal belongings. (Tr. 414-18, 1075). He also reported being active at home. (Tr. 1076, 1564-75, 1584-95). Records further indicated that Claimant was independent in self-care, prepared simple meals, washed the dishes and took out the trash, fed and cleaned up after the pets, could go out alone and drive, shopped in stores, payed bills, attended church weekly, could lift ten to fifteen pounds, and played cards with his wife. (Tr. 424, 793-801, 979, 1080).

In this case, the ALJ provided an adequate basis for the weight assigned to the opinions of Mr. Pearson and Dr. Esplin. He considered the probative evidence of record and provided reasons for the weight assigned to all the medical opinions, including those of Mr. Pearson and Dr. Esplin. (Tr. 1070-80). Considering all the medical opinions, the ALJ determined Claimant had the RFC to perform light work with additional physical and mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. '[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'"), quoting *Howard v. Barnhart*, 379 F.3d 945, 949

15

(10th Cir. 2004). This Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). There is no error in the ALJ's consideration of Mr. Pearson's or Dr. Esplin's opinions.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of March, 2021.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE